|PEATROSS, J.,
dissenting.
I respectfully dissent. La.C.Cr. P. art. 851 provides, in pertinent part:
The court, on motion of the defendant, shall grant a new trial whenever:
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably *904 have changed the verdict or judgment of guilty.
While I am cognizant of the wide discretion afforded the trial court in ruling on a motion for new trial, I find that the trial court’s interpretation of the requirements of article 851(3) in the present case was an abuse of that discretion. Correct interpretation and application of article 851(3) to the case sub judice, in my opinion, clearly requires that Defendant be granted a new trial.
First, Ms. Kamperman’s testimony in her civil deposition is clearly new material evidence, as it bears directly on the element of Defendant’s intent, which must be proven beyond a reasonable doubt to support a conviction of aggravated battery. The majority cites authority which holds that “recantations of trial testimony should be looked upon with the utmost suspicion,” and that “a new trial should not be granted on the ground that the newly discovered evidence destroys the credibility of the State’s witness;” however, the majority bases its opinion on its finding that Ms. Kamperman’s civil deposition testimony was not inconsistent with her trial testimony. It is with that finding that I disagree.
The majority views Ms. Kamperman’s civil deposition testimony as entirely consistent with her testimony at the criminal trial of Defendant. Furthermore, the majority places great significance on the characterization by her counsel of Ms. Kamperman’s position in the civil pleadings, stating that “[djespite the strong argument by Kamperman’s civñ counsel that the shooting was accidental and happened in the manner described by Defendant at trial, Kamperman’s own words do not support that argument.” Based on this distinction between Ms. | ?Kamperman’s civñ deposition testimony and the language in her civil pleadings, the majority finds no abuse of discretion in the trial court’s denial of the motion for new trial.
My review of the record, however, reveals that Ms. Kamperman’s testimony in her civil deposition substantially departs from her testimony in the criminal trial. This departure alone, in my opinion, is sufficient to warrant a new trial. At trial, Ms. Kamperman testified as follows:
A: About all I had time to do was reach out my hand and just take a step closer to him.
Q: What happened when you took a step closer to him?
A: His expression changed and he stood up off the bed and dropped a pillow that he was holding and that’s when I saw the gun. And all in one motion he just came up, out reached his arm and he shot me.
She also testified at the trial that Defendant delayed in calling 911 for assistance, that he showed no emotion following the shooting, that he left the room twice after she had been shot, that he was worried about going to jail and that he was still carrying the gun around immediately after the shooting. Ms. Kamperman testified, “I had been worried about him still having the gun and my being insistent on him calling 911.” When questioned about Defendant’s version of the incident, Ms. Kam-perman testified as follows:
Q: He said are you really going to go, you said yes, and he said I’m going to kñl myself. He took the gun out, you grabbed it, it went off, you got shot in the thumb and shot in the chest. Isn’t that what happened?
A: No, absolutely not.
This testimony clearly attempts to portray an intentional act on the part of Defendant.
Ms. Kamperman, however, tells a completely different story in her subsequent civil deposition. She testified as follows:
Q: I understand. It was [Defendant’s] testimony ... that he was going to threaten suicide with the gun like he had done, as you have admitted, many times before that.
A: Right.
*905 Q: And that when he went to bring the gun up like [sic] and that you went to grab at it and the gun went off. Is that possible?
A: I would suppose....
Additionally, Ms. Kamperman testified in her civil deposition that Defendant’s actions were “very negligent;” and, when asked if she thought there is a possibility that his actions were not intentional, she responded, “I suppose anything is possible.” While I agree with the majority that certain aspects of Ms. Kamperman’s civil deposition testimony are consistent with her testimony at the criminal trial, her statements bearing directly on the intent of the Defendant must not be overlooked.
Ms. Kamperman’s change of heart regarding the intent of Defendant is confirmed in her pleadings filed in the civil suit attempting to collect under Defendant’s mother’s homeowner’s insurance policy.[1] Ms. Kamperman’s original petition was filed while the criminal charges were pending, but prior to the trial and conviction of Defendant. Her original petition alleged that Defendant intentionally shot her. It was not until after Defendant had been convicted and sentenced that Ms. Kamperman amended her petition to allege that Defendant either intentionally or negligently shot her. Ms. Kamperman then filed a motion for summary judgment, wherein she represented to the trial court that “[n]ow that discovery herein has been fully developed, there is no genuine issue of material fact that the actions of William Jeff Cherry were anything other than negligence.” (Emphasis added.) This allegation constitutes newly discovered evidence which alone would support the granting of a new trial.
Even more telling, however, is Ms. Kam-perman’s revised version of the events of November 24, 1995, as told in the factual portion of her memorandum in support of her motion for summary judgment:
Throughout the Summer and early Fall of 1995, Sara Kamperman had been dating William Jeff Cherry and was actually engaged to be married to him, having accepted his offer of a ring in September 1995. She, however, changed her mind and returned the ring to Mr. Cherry on November 23, 1995 (Thanksgiving Day). On' November 24, 1995, Sara went to Mr. Cherry’s home to deliver a birthday present to Mr. Cherry’s brother. Mr. Cherry was upset about not only the dissolution of the engagement with Sara, but also his loss of his employment with Summit Hospital two (2) days earlier. He was very depressed and was crying. As he spoke with Sara about these problems, he became more and more depressed. In the past, Mr. Cherry had communicated to Sara a desire to commit suicide, even acting out the scene by placing a gun in his mouth and, at times, to his head. A collector of over twenty guns, Mr. Cherry had ample weapons to accomplish suicide had he decided to do so. Through a fog of depression and anguish and during their conversation about their broken engagement and his own loss of employment, Mr. Cherry attempted to place a 10mm Glock pistol in his mouth (as he had done 6 times before) while Sara was only one or two feet away. While attempting the feigned suicide, Mr. Cherry brought the gun up towards his mouth yet, during this “one motion” movement, struck the barrel of the pistol against Sara’s hand thereby discharging the pistol and accidentally shooting Sara in the chest. The 10mm Glock pistol has no manual safety and it contained no magazine of bullets. The safety is disengaged upon the pressure of only 7.28 pounds of pressure to the trigger which explains the sudden negligent discharge of the weapon. Evidently, a single bullet had been left in the barrel after the magazine had been removed from the pistol a year before.
*906 Naturally, Sara was injured subsequent to being shot. Mr. Cherry applied a dressing to the wound (a pillow from a nearby couch), took Sara’s pulse, called 911 for assistance, and monitored her vital signs while waiting for medical assistance, all the while telling her he loved her. Sara filed suit against Mr. Cherry and State Farm (his homeowners policy) seeking recovery for her injuries. In her suit, Sara contends that Mr. Cherry was grossly negligent in his actions and that he was not lucid at the time of the shooting but, instead, in a state of delirium which precludes the presence of any intent to injure or kill her. Only in the alternative has the plaintiff plead (sic) that Mr. Cherry intentionally acted against her. The fully developed evidence now shows that there was no intent on the part of Mr. | BCherry to injure and/or kill Sara, but, instead, an emotionally distraught man who accidently shot her.
State Farm answered the lawsuit contending that its policy excludes from its coverage harm committed against another by an insured by virtue of an intentional act (See paragraph 25 of State Farm’s Answer). The act herein committed against Sara was not the result of an intentional act against her and, as such, she is entitled to summary judgment on the issue of insurance coverage.
After describing the shooting as Defendant did at trial, Ms. Kamperman goes on in her memorandum to assert that “[Defendant] did not shoot Sara on purpose nor did he try, want to, or intend to kill her.” (Emphasis hers). I fail to see how the foregoing would not have created reasonable doubt in the mind of the trier of fact at the criminal trial.[2]
Moreover, I disagree with the distinction made in the majority opinion between Ms. Kamperman’s civil deposition testimony and her pleadings filed in the civil suit because I believe such to be, merely her counsel’s characterization of Ms. Kamperman’s testimony as allegations in a motion written and filed on behalf of Ms. Kamperman and with her approval and permission. La. C.C. art. 1853, Judicial confessions, provides that “a judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.” Recognizing that this is not the typical factual situation in which that article operates[3], the spirit of the article is, nonetheless, applicable in |fithe present case. Generally, an allegation, admission or confession in a pleading in another suit is an extrajudicial admission and is admissible evidence, although not a conclusive presumption, and it does not operate as estoppel unless the party invoking it has been prejudiced by relying upon it. See Cross v. Cutter Biological, Div. Of Miles, Inc., 94-1477 (La.App. 4th Cir.5/29/96), 676 So.2d 131, writ denied, 96-2220 (La.1/10/97), 685 So.2d 142. Ms. Kamperman, in other words, is bound by her pleadings; and the allegations, as written *907 by her counsel, are her own and are admissible as evidence in other suits.
Regarding the second requirement of article 851(3), Defendant was diligent in preparing his defense insofar as his efforts to procure Ms. Kamperman’s civil deposition testimony prior to the criminal trial. For reasons beyond the control of Defendant and which I do not find particularly cogent, Ms. Kamperman, conveniently, did not complete the civil deposition until after the conviction of Defendant. Her testimony as to his lack of intent, therefore, was not discoverable before or during trial.
Finally, it is inescapable that, had this evidence been introduced at trial, “it would probably have changed the verdict” of guilty. La.C.Cr. P. art. 851(3). Had the trial court heard Ms. Kamperman’s testimony to the effect that she did not know Defendant’s intent, that she did not know what was going through his mind and her agreeing with defense counsel’s proposition that Defendant’s version of the event was a possibility, it is difficult to believe that the trial court, or a jury had one been empaneled in this case, would have found, beyond a reasonable doubt, that Defendant intended to shoot Ms. Kamperman. Defendant and Ms. Kamperman were the only two witnesses who could testify as to the events of that late November afternoon. In my view, the victim’s testimony as to her uncertainty of Defendant’s intent would unquestionably produce reasonable doubt in the mind of a reasonable trier of fact. For these reasons, I would find reversible error in the [7trial court’s failure to grant Defendant’s motion for new trial, reverse Defendant’s conviction and sentence and remand for further proceedings according to law.
Before NORRIS, and STEWART, CARAWAY, PEATROSS and DREW, JJ.

. The civil suit is styled Sara Beth Kamperman v. William Jeff Cherry, et al, No. 419,870-C, filed in the First Judicial District Court in Caddo Parish, Louisiana.

. I believe it necessary to note at this juncture that, while I am aware of the suspiciousness with which we are to view recantations of trial testimony, I do not regard this particular factual situation as a typical "recantation” case. Ms. Kamperman's uncertainty regarding Defendant’s intent would have been critical testimony at his criminal trial. As the majority points out, there were many weaknesses in the State’s case against Defendant. I do not see this solely as an issue of Ms. Kamperman’s credibility. In State v. Cavalier, 96-3052 (La. 10/31/97), 701 So.2d 949, the supreme court held that the trial court "possesses the discretion to grant a new trial when the witness’s testimony is essentially uncorroborated and dispositive of the question of guilt or innocense and it appears that had the impeaching evidence been introduced, it is likely that the [trier of fact] would have reached a different result.”

. Article 1853 is the successor to former article 2291 of the 1870 Civil Code which defined a judicial admission or confession as a party's express acknowledgment of correctness. The current article most often operates when a party desires to use the pleadings in a prior suit against the same party. This is commonly called an "extrajudicial admission.”